IN THE CASE OF


UNITED STATES, Appellee

v.

James R. CRAVENS, Staff Sergeant
U.S. Air Force, Appellant

No. 01-0249


Crim. App. No. 33438

United States Court of Appeals for the Armed Forces

Argued October 25, 2001

Decided March 25, 2002

SULLIVAN, S.J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and GIERKE, EFFRON, and BAKER, JJ., joined.

<u>Counsel</u>

For Appellant:   Captain Patricia A. McHugh (argued); Lieutenant Colonel
    Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, and Captain Karen
    L. Hecker (on brief); Colonel James R. Wise.



For Appellee:  Major Jennifer R. Rider (argued); Colonel Anthony P. Dattilo
    and Major Lance B. Sigmon (on brief).



Military Judge:  Howard P. Sweeney


<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

Senior Judge SULLIVAN delivered the opinion of the Court.

During June of 1998, appellant, an E-5, was tried by a general court-martial composed of officer and enlisted members at Travis Air Force Base in California.  He was charged with one specification of wrongfully using methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was found guilty of that offense and sentenced to a bad-conduct discharge and reduction to E-4.  On November 2, 1998, the convening authority approved this sentence as adjudged, and on October 31, 2000, the Court of Criminal Appeals affirmed.

This Court granted review in this case on May 25, 2001, on two issues:

I.

WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS HAIR DRUG TEST RESULTS WHEN THE OSI AGENTS PROVIDED FALSE AND MISLEADING INFORMATION TO THE MAGISTRATE AND WHEN THERE WAS A LACK OF PROBABLE CAUSE FOR THE SEARCH AUTHORIZATION.

II.

WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION IN LIMINE TO SUPRESS THE HAIR TEST RESULTS BASED ON MIL.R.EVID. 401 AND 403, WHEN THE GOVERNMENT EXPERT WITNESS TESTIFIED THAT THERE WAS NO WAY TO DETERMINE WHICH PART OF THE HAIR CONTAINED THE ILLEGAL DRUG AND, THUS, WHEN APPELLANT ALLEGEDLY USED THE SUBSTANCE.

We hold that the military judge did not err when he admitted evidence of drug tests performed on appellant's hair showing the

presence of methamphetamine.  See United States v. Allen, 53 MJ

402 (2000); see generally United States v. Bush, 47 MJ 305

(1997).


   The military judge made the following findings of fact and

conclusions of law concerning appellant's motion to suppress the

results of the testing of his hair for traces of drugs:

> 1.  In the early morning hours of Tuesday, 1 April 1998, Deputy Ernesto Ramirez and Deputy Brian Bishop were on routine patrol in a high crime area of Whittier, CA.  They were in uniform, driving a standard black and white police car.  Deputy Ramirez was a training officer and Deputy Bishop was in a training status on that date.
>
> 2.  At approximately 0002 hours on 1 April 1998, the Deputies saw a vehicle traveling in front of them with its license plate obstructed by a trailer hitch.  This is a violation of California Vehicle Code Section 5201.  Deputy Ramirez turned on his overhead lights in order to warn or cite the driver for the violation.  The driver, later identified as the accused, SSGt James R. Cravens, pulled over.
>
> 3.  Deputy Ramirez approached the driver's side of the vehicle and Deputy Bishop approached the passenger side.  Immediately, Deputy Ramirez noticed a black colored fabric object bulging from beneath the accused's open and unbuttoned shirt.  He detained the accused to investigate his suspicion that the object was a firearm shoulder holster.
>
> 4.  During the investigation concerning the possession of the firearm, Deputy Ramirez noticed the accused was extremely nervous, that he constantly shifted his weight from side to side,

and that his speech was very rapid. The accused would continue to answer questions even after giving complete answers and he would voluntarily talk about subjects without being asked. Deputy Ramirez also noticed his attention seemed to be divided. Based on Deputy Ramirez's training, knowledge, and experience in detecting symptoms of drug use, these objective observations gave him a reasonable suspicion that the accused was under the influence of a stimulant.

5. Based on his objective reasonable suspicion that the accused was under the influence of a stimulant, Deputy Ramirez lawfully detained the accused for further investigation. He asked the accused if he was using any prescription medication. The accused stated he was not.

6. Deputy Ramirez then began to conduct the field tests to determine if the accused was under the influence of a stimulant. These tests were conducted on the side of a public road while the accused was standing outside of his vehicle. While doing the light accommodation test, the accused volunteered, "If you want to know if I did some dope, I did a line earlier," or words to that effect. Deputy Ramirez noticed the accused had little or no reaction to light and his pupils were dilated to approximately 7.5mm using a pupilometer.

7. The accused was then seated in the back of the patrol car while Deputy Ramirez checked his pulse. His pulse was measured at 129 beats per minute. The accused was not in custody, nor had he been placed under arrest. The accused was not in handcuffs during these tests.

8. After this investigation, Deputy Ramirez believed he had probable cause to arrest the accused for violations of the California Health and Safety Code. The accused was arrested for a violation of section 11550(A), use of a controlled

substance, a misdemeanor offense, and a violation of section 11550(E), being under the influence of a controlled substance while in the possession of a firearm, a felony offense.

9. The accused was booked into the Pico Rivera Sheriff's Station. During the booking process, the accused was given the opportunity to provide a urine specimen to prove or disprove the presence of a stimulant or illegal narcotic in his body. The accused was informed that if he refused to submit to a urine test, his refusal would be used against him in a court of law showing consciousness of guilt. In response to the request, the accused stated, "I'm fucked if I do and I'm fucked if I don't." He then decided to refuse to submit a urine specimen.

10. Within the drug culture, "doing a line" means segregating a small pile of powdered drugs, typically cocaine or methamphetamine into lines approximately one to two inches long. Typically a razor blade, credit card, or other like object is used to form the "line" and the user will snort the substance through the nostrils with a straw or other cylindrical object.

11. There are many different means of using methamphetamine. A user can heat the substance and smoke the fumes, usually through a glass pipe of some sort; a user can heat the substance to a liquid form, then inject it; a user can snort the powdered form of the substance as described above, or in some cases a user can ingest the substance in a pill form. The most common means of using methamphetamine in southern California is to snort the substance.

12. Methamphetamine and most stimulants are generally detectable in urine up to 72 hours after ingestion. However, hair serves as a repository for drugs, metabolites, vitamins, and other substances delivered by the blood to the hair. These substances are principally deposited in the internal portion of the

hair, known as the cortex. The forensic acceptability of hair testing relies on the same science, an immunoassay and gas chromotography/mass spectrometry (GC/MS) analysis, as tests for drugs in other body fluids and tissues. <u>The substances and their metabolites can be detected in hair samples approximately seven days after ingestion and will remain present as long as the hair remains</u>.

13. <u>Generally, a GC/MS analysis will detect chronic or repetitive use of a substance. However, depending on several factors including dose, it is scientifically possible to test for a single use, but a positive result is not guaranteed</u>. A positive hair drug test indicates that the person used the substance on at least one occasion, but does not discriminate between the number of uses. A negative hair drug test may indicate that the person did not use the substance (within a time frame consistent with the length of hair) or it may indicate that the accused used a small enough dose of the substance that it would not be detected.

14. On 4 April 1997, SA Ernest Slatinsky and SA Scott Burris, AFOSI Det 110, Los Angeles AFB CA, were first notified of the accused's arrest. SA Slatinsky was informed that no urine sample had been taken from the accused. Based on his experience and the passage of time, he felt probable cause for a urinalysis was lacking. Using AFOSI training materials (Atch 2), SA Slatinsky knew that hair samples retained evidence of drug use longer than urine. SA Slatinsky knew that a positive result was not guaranteed, but knew the science could, depending on the circumstances, detect a single use. SA Burris was under the impression that a hair test would test positive for a single use.

15. On 28 April 1997, SA Ernest Slatinsky, AFOSI Det 110, Los Angles AFB CA, prepared an affidavit outlining the facts and circumstances surrounding the

> traffic stop of the accused on 1 April 1997. (Atch 1, Defense Motion)
>
> 16. SA Slatinsky, SA Burris and Captain O'Conner, an attorney with the Los Angeles AFB legal office, personally presented this affidavit to Colonel John P. Caldwell, the Military Magistrate. Colonel Caldwell used a checklist created by the Staff Judge Advocate's office to assist him in determining if probable cause existed (Atch 4). During this meeting, Colonel Caldwell asked questions of the special agents directly from the checklist. He then asked questions related to the affidavit. Colonel Caldwell may have taken notes of this discussion, but destroyed the notes.

(Emphasis added.) (R. 278) (A.E. XIV)

The military judge made additional findings of fact and conclusions of law on this motion. (R. 279) He found:

> 1. Neither Special Agent Slatinsky nor Special Agent Burris intentionally or with reckless disregard made the affidavit misleading. Nor do I find that the statements in Special Agent Slatinsky's affidavit that "drug metabolites can be detected in hair samples after approximately seven days of ingestion and will remain present as long as the hair remains" is misleading.
>
> While I was concerned by the level of professional competence displayed by Special Agents Slatinsky and Burris and was disturbed by the lack of thoroughness or attention to detail that they exhibited, I judged that their errors and mistakes, which interfered with their preparedness to testify at this trial and accurately report what occurred, was due to inexperience and insufficient training and insufficient supervision rather than any intentional misconduct on their part. Special Agent

Slatinsky's testimony that his failure to discuss his view of the likelihood of detecting a single use of methamphetamine by hair testing was an oversight is unfortunately very credible and consistent with his failure to take notes at the search authorization meeting, forgetting that he could ask National Medical Services to segment the hair and not recalling the questions that he was asked or to discuss the issues with his forensic consultant.

2. The fact that Special Agent Slatinsky did not tell the search authority that he personally believed that there was a "slim chance" that the hair sample would test positive did not taint the validity of the affidavit nor did it take away from the validity of Colonel Caldwell's search authorization.

3. Colonel Caldwell presented very forceful and clear testimony reflecting that he fulfilled his role as a neutral and detached magistrate and that his decision was clearly his own after asking responsible questions, considering the OSI and JA advisor's views and then making a personal decision. Also he had a very good sense of what probable cause was and his role in the process. He is clearly an independent thinker who rendered his personal judgment as he was required to do so. He was convinced that the evidence of the accused's use of an illegal substance could be found in the accused's hair.

4. Doctor Robertson's testimony clearly reflected that the defense's position that the search authority was misadvised as to the capability of the science of hair testing to detect a single use of methamphetamine and that Special Agent's [sic] Slatinsky's failure to segment the hair samples or to request segmentation was a fatal flaw in the search authorization are not correct.

5. The government's use of hair sample drug testing to corroborate the accused's admissions to the police

> officers and to determine what, if any, contraband substances he may have ingested or consumed was reasonable under the totality of the circumstances and did not represent an arbitrary or unreasonable violation of the accused's privacy rights.
>
> As conclusions of law, I specifically adopt the prosecution's statements of law numbered 18 through 32 in Appellate Exhibit XIV and I conclude that the government has met its burden on this motion by more than a preponderance of the evidence.

(Emphasis added.)

_ _ _ _

Appellant's basic contention on this appeal is that scientific evidence showing a sample of his hair tested positive for methamphetamine should not have been admitted at his court-martial. He makes two distinct arguments supporting his position. First, he argues that the sample of hair, which was tested by the Government, was unlawfully seized from him without probable cause to believe it contained evidence of drug use. See Mil.R.Evid. 311(g)(2), Manual for Courts-Martial, United States (1995 ed.).[1] Second, he asserts that the Government failed to show the positive test results were relevant and reliable evidence showing drug use during the time period charged and, therefore, this evidence was inadmissible under Mil.R.Evid. 401 and 403. We conclude that the military judge did not err by

---

[1] All Manual provisions are cited to the version in effect at the time of appellant's court-martial. The current version is identical, unless otherwise indicated.

admitting this hair analysis evidence in this case.  See
generally United States v. Bush, 47 MJ at 305.


I

Appellant initially contends that the military judge erred
when he denied the defense's motion to suppress evidence that a
sample of appellant's hair, seized by the Government, tested
positive for methamphetamine.  He argues that he showed by a
preponderance of the evidence that information provided as the
basis for authorizing this seizure and search was at least
recklessly false and misleading.  He also contends that "[t]he
prosecution failed to rebut the defense evidence or to show the
validity and sufficiency of the rest of the information in the
affidavit."  Final Brief at 6.  For both these reasons, he
asserts the scientific evidence pertaining to the seized hair
should have been excluded.  See Mil.R.Evid. 311(g)(2); Franks v.
Delaware, 438 U.S. 154 (1978).  Finally, appellant argues that,
even assuming the evidence presented to the magistrate in this
case was true, it did not provide a substantial basis for the
magistrate's conclusion that probable cause existed to seize and
test his hair.  See Mil.R.Evid. 311(g)(1) and 315(f).


Appellant particularly asserts in his brief that SA Slatinsky
misled the magistrate, Colonel Caldwell, in three different
matters:

> First, the OSI agent specifically did
> not tell the military magistrate that

the hair testing would not detect a one-time use of methamphetamine, which was the crime OSI was investigating.

\* \* \*

Second, the OSI agents affirmatively misled the military magistrate with their list of cases where "hair testing has been upheld in State, Federal and Military Courts."

\* \* \*

Third, the affidavit claims that hair testing has been "accepted by the scientific and legal communities" as cited in several articles.

Final Brief at 7,9, and 10. Appellant implies that the obviously critical nature of both the purported omission and false information indicates that SA Slatinsky "provided false statements to the military magistrate with at least reckless disregard for the truth." Id. at 13; see United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000) (to show reckless disregard for truth, the defense must offer evidence that affiant in fact entertained serious doubts about the truth of his allegations or had obvious reasons to doubt the veracity of the allegations).

Mil.R.Evid. 311(g)(2) essentially codifies the Supreme Court decision in Franks v. Delaware, supra. It states:

(2) False statements. If the defense makes a substantial preliminary showing that a government agent included a false statement knowingly and intentionally or with reckless disregard for the truth in the information presented to the authorizing officer, and if the allegedly false statement is necessary to the finding of probable cause, the defense, upon request, shall be entitled

> to a hearing. <u>At the hearing, the</u>
> <u>defense has the burden of establishing</u>
> <u>by a preponderance of the evidence the</u>
> <u>allegation of knowing and intentional</u>
> <u>falsity or reckless disregard for the</u>
> <u>truth.</u> If the defense meets it burden,
> the prosecution has the burden of
> proving by a preponderance of the
> evidence, with the false information set
> aside, that the remaining information
> presented to the authorizing officer is
> sufficient to establish probable cause.
> If the prosecution does not meet its
> burden, the objection or motion shall be
> granted unless the search is otherwise
> lawful under these rules.

(Emphasis added.)

Appellant has asked this Court to relitigate the question of SA Slatinsky's state of mind, <u>i.e.</u>, did he <u>knowingly and intentionally, or with reckless disregard for the truth</u>, mislead the military magistrate that a single use of drugs could be detected by hair analysis and that scientific and legal authorities supported the admission of such evidence? <u>See generally</u> <u>United states v. Colkley</u>, 899 F.2d 297, 300-03 (4th Cir. 1990). This was a question of fact for the trial judge. <u>See</u> <u>United States v. Allen</u>, 53 MJ at 408; <u>United States v. Mick</u>, 263 F.3d 553, 564 (6th Cir. 2001). The military judge resolved this question adversely to the defense (R. 278), and his ruling is supported by evidence in the record. <u>See</u> <u>United States v. Colkley</u>, <u>supra</u> at 301.

In this regard, we note that the Government introduced evidence that one-time drug use could actually be detected by hair analysis, albeit under certain limited circumstances. (R.

227-28)  It also introduced evidence that SA Slatinsky was generally aware of this possibility but he did not think it was necessary to inform the magistrate of it.  It further introduced evidence that this agent mistakenly failed to request segmentation, which was the scientific prerequisite for detection of one-time use. (R. 181, 187-88, 196, 198)  Finally, the Government introduced evidence that he relied on materials he received in training as the basis for the scientific and legal representations he made in his affidavit. (R. 179-80)  In these circumstances, we conclude that appellant has failed to show the military judge's factfinding as to SA Slatinsky's state of mind was clearly erroneous.  See United States v. Mick, supra; cf. United States v. Whitely, 249 F.3d 614, 621-24 (7th Cir. 2001); see generally United States v. Photogrammetric Data Services, Inc., 259 F.3d 229, 238 (4th Cir. 2001) (mere negligence in recording facts in supporting affidavit is not sufficient to establish Franks violation).[2]

Turning to appellant's second argument, he contends that, accepting as true the information provided to the military magistrate, there was no substantial basis for his conclusion that probable cause existed to seize his hair on April 29, 1997. We note, however, that there was evidence appellant admitted

---

[2]  This case illustrates well why federal military and civilian systems of justice grant deference to search authority provided by detached magistrates, such as Colonel Caldwell, who are prepared to put law enforcement affiants to the test.

using drugs to a police officer on April 1, 1997. There was also evidence that appellant exhibited a demeanor consistent with drug use at that time. Finally, there was evidence presented to the military magistrate that "drug metabolites can be detected in hair samples after approximately seven (7) days of ingestion and will remain present as long as the hair remains." (Statement of Probable Cause April 28, 1997) (A.E. XIII Attachment 1) This information constituted a legally sufficient basis for finding probable cause, as defined in Mil.R.Evid. 315(f)(2) and our case law. See United States v. Prouse, 945 F.2d 1017, 1024 (8th Cir. 1991); see generally United States v. Hall, 50 MJ 247, 249 (1999) ("Probable cause to search exists when there is a reasonable belief that the . . . evidence sought is located in the place or on the person to be search[ed].").

II

Appellant also asserts that the results of hair analysis tests for drugs in his case were inadmissible under Mil.R.Evid. 401 and 403. He notes that he was charged with using methamphetamine on or about April 1, 1997, but his 3-centimeter hair sample was not taken until April 29, 1997, and it was not segmented. He asserts therefore that a positive test result for his hair sample indicated only drug use at some unspecified point within four to five months preceding April 29, 1997. Final Brief at 16. Accordingly, he argues that such hair analysis evidence was not relevant to show his charged use of methamphetamine on or about April 1, 1997. See Mil.R.Evid. 401.

Appellant was charged with using methamphetamine between "on or about 28 February 1997 and on or about 1 April 1997." Evidence of his admission on April 1, 1997, to "doing a line" was admitted in this case, as well as evidence of a police officer's observations of his demeanor at that time also suggesting recent drug use. Scientific evidence further indicating drug use which was proximate in time to the charged use is, at the very least, relevant to corroborate his confession. See United States v. Hall, supra at 251-52 (evidence of positive urinalysis three months after confessed use is sufficient corroboration of confession).

An additional argument appellant made at trial was that due to the above time-of-use problem, the challenged hair analysis evidence was too confusing for admission at this court-martial. See Mil.R.Evid. 403. (R. 262, 266) On appeal, however, he asserts that "the nebulous nature of the tests conducted in Appellant's case and the variation in test 'results' that can be reported by a laboratory calls into question the validity of the 'science' implemented in Appellant's case." Final Brief at 16-17. He contends the tests were nebulous because "there is no cutoff process to determine whether a result is positive. Instead, that is left of the discretion (guesswork) of the forensic toxicologist looking into the case." Id. at 16. He now argues that such dubious scientific evidence should also have been excluded under Mil.R.Evid. 403.

Appellant cites no legal authority for his attack on the scientific validity of hair analysis for determining the presence of contraband drugs.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Moreover, in United States v. Bush, this Court held that an appellate court is not an appropriate place to relitigate a motion to admit such expert testimony, and we refused to determine de novo the reliability of hair analysis evidence admitted by the judge in that case.  47 MJ at 305. Appellant essentially makes the same request on this appeal under the guise of Mil.R.Evid. 403.  Moreover, evidence was admitted in this case of a reporting limit set by the National Medical Services which undermines the key factual component of his scientific validity argument.  (R. 383-86)  Appellant has not demonstrated that the reporting limit established by NMS was too low or otherwise unreliable.  Finally, we note that the military judge specifically considered and admitted this hair analysis evidence under Mil.R.Evid. 401 and 403, and we are not convinced that he abused his discretion in this regard.  (R. 279)  See id. at 312.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.