*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

### UNITED STATES
Appellee

**v.**

### Kevin M. FURTH, Second Lieutenant
United States Army, Appellant

### No. 20-0289
Crim. App. No. 20180191

Argued January 13, 2021—Decided April 26, 2021

Military Judge: Christopher E. Martin

For Appellant: *Major Scott A. Martin* (argued); *Colonel Michael C. Friess*, *Lieutenant Colonel Angela D. Swilley*, and *Captain Paul T. Shirk*.

For Appellee: *Captain Marc J. Emond* (argued); *Colonel Steven P. Haight*, *Lieutenant Colonel Wayne H. Williams*, and *Major Dustin B. Myrie* (on brief); *Captain Allison Rowley*.

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY and Judge SPARKS joined. Judge MAGGS filed a separate dissenting opinion, in which Judge HARDY joined.

_____

Judge OHLSON delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of one specification of absence without leave (AWOL) and one specification of wrongful appropriation, in violation of Articles 86 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 921 (2012). The convening authority approved Appellant's adjudged sentence of a reprimand, confinement for three months, and dismissal from the service. The United States Army Court of Criminal Appeals (CCA) affirmed the findings and only so much of the sentence as provided for confinement for three months and a reprimand.[1] *United States v. Furth*, No. ARMY 20180191, 2020 CCA LEXIS 149, at \*8, 2020 WL 2154030, at \*3 (A. Ct. Crim. App. May 4, 2020) (per curiam)

---

[1] *See infra* note 5.

(summary disposition) (unpublished). We granted review on the following issue:

> Whether Appellant received effective assistance of counsel when he was erroneously advised that his pending resignation request, if approved, would vacate his guilty plea.

*United States v. Furth*, 80 M.J. 319 (C.A.A.F. 2020) (order granting review). We assume without deciding that trial defense counsel's performance was deficient, but conclude that Appellant has failed to establish prejudice. We therefore affirm the lower court's decision that there was no ineffective assistance of counsel in this case.

## I. Background

Appellant, a second lieutenant in the United States Army, was a Signal Corps officer. He received orders requiring him to report to Fort Benning, Georgia, for jump school in March 2016, and then report to Fort Bragg, North Carolina, in April 2016. However, Appellant did not report for duty at either location or at any other military installation. Nevertheless, for approximately six months he knowingly continued to draw military pay totaling more than $27,000. In December 2017—more than twenty-one months after he was ordered to report for duty—Appellant finally turned himself into the Provost Marshal's Office at Fort Bragg. By the time of his surrender, Appellant had spent all but ninety-one cents in his bank account.

The Government charged Appellant with one specification of desertion, three specifications of AWOL, and one specification of larceny of military pay and allowances in excess of $500, in violation of Articles 85,[2] 86, and 121, UCMJ. Approximately two weeks after preferral of these charges, Appellant submitted a request for Resignation for the Good of the Service (RFGOS).[3] While the RFGOS was pending, the convening authority referred Appellant's case to a general court-martial and Appellant's entire chain of command—including

---

[2] 10 U.S.C. § 885 (2012).

[3] The Deputy Assistant Secretary of the Army for Review Boards (DASA-RB) served as the approval authority for this RFGOS request.

the convening authority—recommended disapproval of the RFGOS.

Prior to trial, defense counsel advised Appellant that if his RFGOS request was approved following the conclusion of the court-martial, the court-martial proceedings would be vacated because the convening authority could not take action inconsistent with the terms of the RFGOS. Trial defense counsel further informed Appellant that "he would lose the favorable terms" of a pretrial agreement if Appellant obtained a delay in the court-martial proceedings in order to first learn the disposition of the RFGOS request. Appellant then agreed to plead guilty to three AWOL specifications[4] and one specification of wrongful appropriation, with a sentence cap of nine months in prison. The military judge accepted Appellant's guilty pleas and sentenced him to a reprimand, confinement for three months, and dismissal.

In May 2018—just over one month after Appellant's plea proceedings concluded—the DASA-RB approved Appellant's RFGOS request, directed that the court-martial findings and sentence be vacated, and imposed an Under Other Than Honorable Conditions discharge. The Army then issued a DD Form 214 on June 6, 2018, characterizing Appellant's discharge as Under Other Than Honorable Conditions. Despite the issued DD Form 214, the convening authority subsequently approved the adjudged court-martial sentence. Following the convening authority's action, the DASA-RB rescinded her approval of the RFGOS in March 2019, and the Army purported to void Appellant's DD Form 214 in July 2019.[5]

---

[4] The military judge consolidated the three AWOL specifications into one.

[5] The CCA concluded that the Army's documentation for voiding the DD Form 214 was "unsupported by any authority purporting to rescind a valid administrative discharge." *Furth*, 2020 CCA LEXIS 149, at *7, 2020 WL 2154030, at *3. Because the CCA concluded that Appellant received "a valid administrative discharge" and the Army's "later efforts to recall [A]ppellant to active duty had no effect," the court "set aside [A]ppellant's dismissal [in order] to give effect to the administrative discharge." *Id.* at *7–8, 2020 WL 2154030, at *3.

On appeal to the CCA, Appellant claimed that he received ineffective assistance of counsel based on his counsel's erroneous advice about the RFGOS. In support of this claim, he submitted a declaration stating: "If I had known that pleading guilty would have prevented me from fully benefitting from an approved RFGOS, I would not have pleaded guilty prior to receiving a decision on my RFGOS." The CCA concluded that Appellant did not establish ineffective assistance of counsel. *Furth*, 2020 CCA LEXIS 149, at *1 n.1, 2020 WL 2154030, at *1 n.1.

We granted review to determine whether trial defense counsel's advice about the RFGOS during the plea proceedings constituted ineffective assistance of counsel.[6] *Furth*, 80 M.J. at 319.

## II. Standard of Review

We conduct a de novo review of ineffective assistance of counsel claims. *United States v. Carter*, 79 M.J. 478, 480 (C.A.A.F. 2020).

## III. Applicable Law

When evaluating claims of ineffective assistance of counsel, this Court applies the framework from *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Edmond*, 63 M.J. 343, 345 (C.A.A.F. 2006). Under *Strickland*, an appellant bears the burden of demonstrating that (a) defense counsel's performance was deficient, and (b) this deficient performance was prejudicial. *Strickland*, 466 U.S. at 687.

"The *Strickland* test applies in the context of [cases involving] guilty pleas," such as this one. *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012). However, the prejudice inquiry "is modified to focus on whether the 'ineffective performance affected the outcome of the plea process.'" *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 53, 56–58 (1985)). That is, the appellant

---

[6] We decline to address any claim that trial defense counsel was ineffective for failing to seek a continuance in the court-martial proceedings pending the disposition of the RFGOS request. Such a claim is outside the scope of the granted issue. *See, e.g.*, *United States v. Bodoh*, 78 M.J. 231, 233 n.1 (C.A.A.F. 2019).

must establish prejudice by showing that there is a "reasonable probability that, but for counsel's errors, [the appellant] would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citation omitted) (internal quotation marks omitted); *Bradley*, 71 M.J. at 16. "The Supreme Court's references to reasonable probabilities … clearly establish that the [*Strickland* prejudice] test is objective," which we review de novo. *United States v. Murray*, 42 M.J. 174, 178 (C.A.A.F. 1995); *see also Rose*, 71 M.J. at 143 (looking at question of *Strickland* "prejudice de novo" (citation omitted) (internal quotation marks omitted)).[7]

Standing alone, an appellant's "*post hoc* assertions … about how he would have pleaded but for his attorney's deficiencies" are not enough to establish prejudice. *Lee*, 137 S. Ct. at 1967. Courts must also "look to contemporaneous evidence to substantiate [an appellant's] expressed preferences." *Id.* This is so because "the [appellant] has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019).

### IV. Analysis

We will assume without deciding that counsel's performance was deficient here, and instead, we will resolve this case by analyzing and applying the prejudice prong of the *Strickland* test. *See United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (stating that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed" (alterations in original) (citation omitted) (internal quotation marks omitted)).

"[I]n order to satisfy the 'prejudice' requirement, [an appellant] must show that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,*

---

[7] We therefore are not making factual findings when we assess reasonable probabilities for the *Strickland* prejudice prong. We instead are examining all of the evidence in the record in the course of conducting a de novo review of this issue.

474 U.S. at 59 (footnote omitted). Based on our review of the totality of the evidence in this case, and for the reasons cited below, we conclude that Appellant has failed to meet his burden despite his post hoc assertion that he "would not have pleaded guilty prior to receiving a decision on [his] RFGOS."[8]

First, the plea agreement that Appellant now claims he would have rejected was quite favorable. To begin with, it protected him from convictions for desertion and larceny exceeding $500 and instead allowed him to plead to the lesser offenses of AWOL and wrongful appropriation. The latter convictions presumably would be far more palatable to prospective future employers. Further, the plea agreement significantly limited Appellant's sentencing exposure. Specifically, instead of a maximum term of imprisonment of twelve years, the quantum portion of the plea agreement limited any sentence of confinement to nine months.

Second, the Government's case for desertion and larceny was extremely strong. *See Lee*, 137 S. Ct. at 1966 ("Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one."). After all, Appellant clearly did not report for duty and he clearly waited over a year and a half to surrender to military authorities. *See Manual for Courts-Martial, United States* pt. IV, para. 9.c.(1)(a), (c)(i), (iii) (2016 ed.) (*MCM*). He also clearly spent military pay in the amount of $27,112.13 that he was not entitled to receive. *See MCM* pt. IV, para. 46.c.(1)(a), (f)(i), (ii), (iii)(C).

Third, the record reflects no compelling extenuating or mitigating circumstances in this case that would have resulted in a reduced sentence.[9] Indeed, Appellant admitted that "no facts … justif[ied] his conduct." Although young, Ap-

---

[8] Under *Lee*, an appellant's post hoc assertions, whether asserted by declaration or determined at a factfinding hearing, are not dispositive of *Strickland* prejudice because the Supreme Court has held that appellate courts should "look to contemporaneous evidence to substantiate" these assertions. 137 S. Ct. 1967.

[9] Appellant stipulated to being "mentally responsible and competent" at all relevant times and that "[n]o current mental health diagnosis … affected his ability to act willfully."

pellant was a commissioned officer in the United States military and he rightly would have understood that he would be held to a high standard. *See United States v. Meakin*, 78 M.J. 396, 404 (C.A.A.F. 2019) ("[I]t has historically been the case that officers are held to a higher standard of behavior.").

Fourth, Appellant was informed that if he did not accept the plea offer in a timely manner, he would lose the benefit of at least some of its favorable terms. Appellant also understood that he did not have the unilateral ability to continue the court-martial proceedings.[10] Indeed, when informed of Appellant's pending RFGOS, the military judge stated that he would "proceed with trial as scheduled unless or until … told otherwise." Because there are no time lines for approval or disapproval of a RFGOS request, it is highly unlikely that either the Government or the military judge would have been willing to pause the proceedings indefinitely for such a straightforward case.

Fifth, everyone in Appellant's chain of command had recommended disapproval of the RFGOS request. Appellant ar-

---

[10] At oral argument, Appellant's counsel asserted that had trial defense counsel properly understood the law regarding the effects of the RFGOS, he would have legitimately protracted the pretrial proceedings so that the court-martial did not commence until after the DASA-RB had taken action on the request. For example, Appellant argues that requesting and conducting an Article 32, UCMJ, 10 U.S.C. § 832 (2012), hearing, seeking and obtaining discovery, and litigating issues arising from that discovery, likely would have delayed the start of the trial beyond the date of the RFGOS approval. However, this argument is based on hindsight and is far too speculative, both in regard to the actual amount of time these procedures would have taken in this very clear-cut, straightforward case, and in regard to how trial defense counsel actually would have proceeded. Indeed, apropos the latter point, the Government's brief correctly notes that "[t]here is no required timeframe upon which the DASA-RB must act on a RFGOS," Brief for Appellee at 16, *United States v. Furth*, No. 20-0289 (C.A.A.F. Oct. 26, 2020), the defense did not undertake any actions to ascertain when the DASA-RB would make her decision, and, as noted in the body of the text above, Appellant was aware that the military judge would not wait for the RFGOS decision before beginning the trial and that the Government would not look favorably at defense efforts to obtain a delay.

gues (a) this point is irrelevant and (b) even if it were relevant, this point is not controlling because in some unpublished CCA cases RFGOS requests have been approved despite the chain of command's disapproval recommendation. We are not persuaded. The anecdotal evidence now cited by the defense does not demonstrate that there was a basis for Appellant to believe at the time of his guilty plea that the DASA-RB routinely disregards a chain of command's recommendation regarding the disposition of a RFGOS request. Further, we note that an appellant is not entitled to relief based on the "idiosyncracies [sic] of the particular decisionmaker." *Strickland*, 466 U.S. at 695. Therefore, we conclude that Appellant's contemporaneous understanding of the unlikely prospect that the DASA-RB would approve his RFGOS request is relevant for determining the rationality of Appellant's decision to accept the plea bargain.

In light of all these facts and circumstances at the time Appellant entered his guilty pleas, we conclude that there is no "reasonable probability" that Appellant would have rejected the plea offer from the Government even if trial defense counsel's performance had not been deficient. *Lee*, 137 S. Ct. at 1965. Accordingly, Appellant has failed under *Strickland* to demonstrate prejudice in this case, and thus he is unable to meet his burden of establishing ineffective assistance of counsel.[11]

---

[11] In their dissent, our colleagues take the position that this case should be remanded for a hearing pursuant to *United States v. DuBay,* 17 C.M.A. 147, 37 C.M.R. 411 (1967), in order for a military judge to make findings about whether Appellant truly would have rejected the Government's plea offer and gone to trial if defense counsel had provided him with accurate information about the RFGOS. The dissent's reasoning has merit and we acknowledge that this is a close question. However, based on the record in this case, and based on the law generally applicable to ineffective assistance of claims, we conclude that a *DuBay* hearing is not necessary here. We first note that Appellant already has clearly stated on the record the legal advice that was provided to him. Specifically, in a declaration he wrote:

> Based on my review of [applicable Army regulations] as well as consultations with my trial defense counsel, it was my clear understanding that regardless of

what happened with the preferred charges in my
case, the RFGOS, if approved, would result in me re-
ceiving an administrative discharge and no criminal
conviction, even if at time of approval I had been con-
victed of the charges and sentenced to a dismissal.

Importantly, Appellant's trial defense counsel submitted affidavits
agreeing with Appellant, so there is no dispute on this essential
point. Next, in terms of the effect this legal advice had on his
decision-making process, Appellant has definitively stated on the
record: "If I had known that pleading guilty would have prevented
me from fully benefiting from an approved RFGOS, I would not
have pleaded guilty prior to receiving a decision on my RFGOS."
Further, as spelled out earlier in this opinion, the record is clear
about the countervailing factors that would have prompted
Appellant to proceed with his guilty plea despite the fact that his
RFGOS was still pending. Because of the clarity of the record on all
of these points, we find an inadequate basis to conclude that a
*DuBay* hearing would further illuminate these issues. In terms of
the law applicable to such legal claims, in *Murray* we held that an
*objective* standard—rather than a *subjective* standard—applies
when deciding the *Strickland* prejudice prong. 42 M.J. at 178 ("The
Supreme Court's references to reasonable probabilities … clearly
establish that the test is objective."); *see also Lee*, 137 S. Ct. at 1965
(explaining "the defendant can show prejudice by demonstrating a
reasonable probability that, but for counsel's errors, he would not
have pleaded guilty and would have insisted on going to trial"
(citation omitted) (internal quotation marks omitted)); *Bradley*,
71 M.J. at 17 ("Appellant also must satisfy a separate, objective
inquiry—he must show that if he had been advised properly, then
it would have been rational for him not to plead guilty."). Indeed,
the Supreme Court has made it clear that an appellant's assertion
of how he would have modified his actions if he had received correct
legal advice is just one piece of evidence that must be considered in
the course of a court's analysis and by itself cannot be deemed
dispositive of an ineffective assistance of counsel claim. *Lee*, 137 S.
Ct. at 1967. The Supreme Court has instead instructed appellate
courts to look at contemporaneous evidence in the record and then
make an *objective* determination of the likelihood of the appellant's
assertion. *Id.* at 1967–69. In some cases, the professed state of mind
of an appellant at the time he or she entered a guilty plea may not
be clear from the record. Similarly, in some cases the record may
not contain sufficient contemporaneous evidence about the factors
an appellant would have considered in deciding whether or not to
plead guilty. In those instances, a *DuBay* hearing may be
warranted. *See Massaro v. United States*, 538 U.S. 500, 504–05
(2003). Here, however, the record evidence adequately addresses

**V. Judgment**

We affirm the decision of the United States Army Court of Criminal Appeals.

---

these points and we do not believe that a *DuBay* military judge would be in a better posture than this Court to resolve the objective legal question of whether there is a reasonable probability that Appellant would have gone to trial in this case if he had received the correct legal advice from his counsel. *United States v. Marshall*, 946 F.3d 591, 596 (D.C. Cir. 2020) (explaining that the court may "decline to remand [an ineffective assistance of counsel claim] when the record conclusively shows the defendant is not entitled to relief" (citation omitted) (internal quotation marks omitted)); *see also Milios v. United States*, 813 F. App'x 646, 648–49 (2d Cir. 2020) (holding that an evidentiary hearing was not required for ineffective assistance of counsel claim when "the motion and the files and records of the case conclusively show that [the defendant] was not entitled to relief" (citation omitted) (internal quotation marks omitted)). Therefore, unlike our colleagues, we conclude that no *DuBay* hearing is warranted in this case.

Judge MAGGS, with whom Judge HARDY joins, dissenting.

Appellant asks this Court to vacate the findings and sentence in his case because he received ineffective assistance of counsel. He alleges in an affidavit that his two trial defense counsel gave him incorrect advice before he agreed to plead guilty and that he would not have pleaded guilty if his trial defense counsel had advised him correctly. He relies on *Lee v. United States*, 137 S. Ct. 1958 (2017), a case in which the Supreme Court upheld an ineffective assistance of counsel claim on similar facts.

The Court, however, rejects Appellant's ineffective assistance claim because it disbelieves Appellant's allegations. The Court concludes, for a variety of reasons, that "there is no 'reasonable probability' that Appellant would have rejected the plea offer from the Government even if trial defense counsel's performance had not been deficient." *United States v. United States v. Furth*, __ M.J. __, __ (8) (C.A.A.F. 2021). The Court sees no need for an evidentiary hearing to test the truth of Appellant's allegations.

I do not believe that this Court can dismiss Appellant's ineffective assistance claim simply because the Court considers the assertions in Appellant's affidavit to be improbable. Whether the allegations in the affidavit are true or not is a factual question that the record in this case does not resolve. "This Court may 'take action only with respect to matters of law,'" and does not have the power to make factual findings. *United States v. Piolunek*, 74 M.J. 107, 108 (C.A.A.F. 2015) (quoting Article 67, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867 (2012)). Based on the familiar factors described in *United States v. Ginn*, 47 M.J. 236, 244 (C.A.A.F. 1997), I would remand the case to the United States Army Court of Criminal Appeals (ACCA), and would instruct the ACCA to order an evidentiary hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967). *See Toohey v. United States*, 60 M.J. 100, 103 (C.A.A.F. 2004) ("[W]here important facts necessary to resolve an issue are unavailable, 'a remand to establish a factual record normally [is] required.'" (second alteration in original) (quoting *United States v. Haney*, 45 M.J. 447, 448 (C.A.A.F. 1996))); *United States v. Wean*, 37 M.J. 286, 287 (C.M.A. 1993) (ordering a

*DuBay* hearing because the "granted issue, concerning ineffective assistance of counsel, requires answers to certain factual questions which are not clear from the record"). Because the Court reaches a different conclusion, I respectfully dissent.

## I. Background

This case concerns the legal advice that Appellant received about the effect of a request that he made for Resignation for the Good of the Service (RFGOS). Appellant has filed an affidavit in which he makes two key statements. First, Appellant asserts:

> Based on my review of [applicable Army regulations] as well as consultations with my trial defense counsel, it was my clear understanding that regardless of what happened with the preferred charges in my case, the RFGOS, if approved, would result in me receiving an administrative discharge and no criminal conviction, even if at time of approval I have been convicted of the charges and sentenced to a dismissal.

Second, Appellant asserts: "If I had known that pleading guilty would have prevented me from fully benefiting from an approved RFGOS, I would not have pleaded guilty prior to receiving a decision on my RFGOS."

Appellant's two trial defense counsel have submitted affidavits confirming that they provided the advice that Appellant alleges, both before and after Appellant submitted his offer to plead guilty. Captain Floyd, who was Appellant's primary defense counsel, specifically asserts in his affidavit that he "advised the Appellant that the RFGOS, if approved, would result in the vacation of court-martial proceedings, including setting aside the findings and the adjudged sentence (if any)." Captain Floyd also advised Appellant that his "plea of guilty would not affect the processing of his RFGOS," and "that if the RFGOS was approved, his plea of guilty, along with all other court-martial proceedings, would essentially be a nullity; set aside by the order of [the Secretary of the Army]." Captain Floyd asserts that he repeated this advice: "Before he decided to submit the RFGOS, I advised him of all of this, and again when deciding whether he would submit an [offer to plead guilty], or plead guilty at all." In accordance

with this legal advice, Captain Floyd "advised [Appellant] that it was better to agree to a closer-in-time trial date, than to wait it out." Captain Floyd also reports that "it was only after the RFGOS was submitted, that [Appellant] finally decided against contesting the larceny charge at court-martial."

## II. Analysis

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for assessing claims of ineffective assistance. A court must decide both (1) whether counsel's performance was so deficient that it violated the Sixth Amendment right to counsel, and (2) if there was such a deficiency, whether the deficiency prejudiced the accused. *Id.* at 687. In this case, the Court assumes without deciding that trial defense counsel was deficient in providing advice to Appellant before he pleaded guilty. *Furth*, __ M.J. at __ (2). But the Court concludes that Appellant cannot show prejudice under *Strickland* because, despite what Appellant swears in his affidavit, and despite what his counsel have sworn in their affidavits, the Court decides there is no reasonable probability that Appellant would have pleaded not guilty if his trial defense counsel's performance had not been deficient. *Id.* at __ (8).

For reasons that I explain below, if it is true, as Appellant asserts in his affidavit, that trial defense counsel advised Appellant that the RFGOS would undo the findings of guilt in his case, then trial defense counsel's performance was deficient, and Appellant has satisfied the first requirement of *Strickland*. Similarly, for reasons that I also explain below, if it is true, as Appellant asserts in his affidavit, that he would not have pleaded guilty had he not received incorrect advice, then Appellant has shown prejudice, and he has satisfied the second requirement of *Strickland* based on the Supreme Court's recent decision in *Lee*.

But this Court does not know whether Appellant's sworn statements are true or false. Instead, what trial defense counsel advised Appellant and what Appellant probably would have done if he had not received incorrect advice are unresolved factual questions. Accordingly, as I further explain below, a remand is necessary so that a military judge

can resolve these material factual questions at an evidentiary hearing.

## A. Deficient Performance

Appellant contends that his trial defense counsel were deficient because they incorrectly advised him that pleading guilty would not result in a criminal conviction if the Deputy Assistant Secretary of the Army for Review Boards (DASA-RB) approved his RFGOS.[1] He likens his case to *Denedo v. United States*, 66 M.J. 114 (C.A.A.F. 2008), and *United States v. Rose*, 71 M.J. 138 (C.A.A.F. 2012), in which this Court considered whether other trial defense counsel were deficient for giving incorrect advice about the consequences of guilty pleas. The Government has little to say in response. Although the Government does not affirmatively concede that trial defense counsel were deficient in their performance because of their erroneous advice, the Government in its brief repeatedly refers to the alleged advice as "incorrect." The Government also does not attempt to distinguish *Denedo* and *Rose* from this case on the issue of deficient performance.

What trial defense counsel advised Appellant is a question of fact; whether that advice was deficient is a question of law. *Rose*, 71 M.J. at 143. In my view, if it is true, as Appellant alleges, that trial defense counsel advised him that approval of the RFGOS would undo the findings of his court-martial, then Appellant received incorrect legal advice. And based on our previous decisions in *Denedo* and *Rose*, I further conclude

---

[1] Appellant also argues that his trial defense counsel were deficient because they should have requested a continuance to allow the DASA-RB to act on his RFGOS request before Appellant proceeded to trial. The Government argues in response that trial defense counsel were not ineffective for failing to request a continuance because a continuance was unlikely to be granted, because the DASA-RB was unlikely to approve the RFGOS, and because a continuance might have caused the convening authority to withdraw the favorable plea agreement. Because I conclude that defense counsel were deficient for giving erroneous legal advice, I see no need to address the question whether trial defense counsel were also deficient for failing to request a continuance.

that in providing this incorrect advice, "counsel's representation [would have fallen] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

In *Denedo*, the appellant contended that his counsel had failed to advise him about the consequences of his guilty plea on his deportation status. 66 M.J. at 128. In remanding the case for further findings, this Court stated the following rules:

> An attorney's failure to advise an accused of potential deportation consequences of a guilty plea does not constitute deficient performance under *Strickland. See, e.g., United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003). An affirmative misrepresentation about such consequences, however, can constitute deficient performance, particularly when the client requests the information and identifies the issue as a significant factor in deciding how to plead.

*Id.* at 129. In *Rose*, the appellant asked for information about sex offender registration, but his trial defense counsel did not provide it. 71 M.J. at 140. This Court held that this failure was deficient because the facts showed that the request was reasonable and that sex offender registration was a "key concern" of the accused in deciding whether to plead guilty. *Id.* (internal quotation marks omitted). In my view, *Denedo* and *Rose* are indistinguishable from the present case if what Appellant and his counsel allege is true.

## B. Prejudice

The Supreme Court's decision in *Lee* governs the issue of prejudice in this case. In *Lee*, the petitioner claimed that his defense counsel was ineffective because he incorrectly informed him that his guilty plea would not affect his deportation status. 137 S. Ct. at 1963. The Supreme Court ruled that the petitioner had established prejudice under *Strickland* because he had "demonstrated a 'reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Id.* at 1969 (alteration in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In reaching this conclusion, the Supreme Court relied on findings of fact by a United States magistrate judge who held an evidentiary hearing at which the petitioner and his attorney testified. *Id.* at 1963–64. The Supreme Court rejected the Government's arguments that the petitioner could

not show prejudice because he had "no viable defense at trial" and would "almost certainly have lost and found himself" in a worse position if he had pleaded not guilty. *Id.* at 1966. The Supreme Court sided with the petitioner, who argued that he was prejudiced because he lost the opportunity to "gamble[] on trial, risking more jail time for whatever small chance there might be of an acquittal that would let him remain in the United States." *Id.*

What Appellant would have done if he had received correct advice is a question of fact to be determined by evidence. *See id.* at 1967 (admonishing judges to consider not just post hoc assertions by a defendant about what the defendant would have done but also "contemporaneous evidence to substantiate [the] defendant's expressed preferences"). Whether Appellant suffered prejudice from receiving incorrect advice is a question of law. *See Rose*, 71 M.J at 143. In this case, as described above, Appellant has sworn in an affidavit: "If I had known that pleading guilty would have prevented me from fully benefiting from an approved RFGOS, *I would not have pleaded guilty* prior to receiving a decision on my RFGOS." (Emphasis added.) This *factual* allegation, if true, is *legally* sufficient to establish prejudice. Under *Lee*, an accused can establish prejudice by proving that he would not have pleaded guilty but for the erroneous legal advice that he received.[2]

---

[2] The Government argues that Appellant "does not claim [in his affidavit] he would have pleaded *not guilty*, but for his counsel's incorrect advice," and therefore asserts that his affidavit is legally insufficient as an allegation of prejudice. (Emphasis added.) The lower court adopted the same interpretation of Appellant's affidavit. *United States v. Furth*, No. ARMY 20180191, 2020 CCA LEXIS 149, at \*1 n.1, 2020 WL 2154030, at \*1 n.1 (A. Ct. Crim. App. May 4, 2020). But the language in Appellant's affidavit, namely, "I would not have pleaded guilty," is identical to the language used to describe the test for prejudice in the precedents of both the Supreme Court and this Court. *See Lee*, 137 S. Ct. at 1969 (holding that the test for prejudice is whether there is a " 'reasonable probability that, but for [his] counsel's errors, *he would not have pleaded guilty* and would have insisted on going to trial' " (alteration in original) (emphasis added) (citation omitted)); *see also Rose*, 71 M.J. at 140 ("Where, as here, a defendant's reasonable request for information regarding sex offender registration was 'a key concern' identified to defense counsel that 'went unanswered,' and if it had been correctly

*Lee*, 137 S. Ct. at 1969. If Appellant's statement is true, then Appellant has shown prejudice in the same way that the petitioner showed prejudice in *Lee*: Appellant decided to plead guilty in reliance on erroneous legal advice. Refusing to plead guilty and possibly giving up his favorable plea deal might have been risky, and therefore unwise, because there appeared to be little chance of acquittal. But Appellant, like the petitioner in *Lee*, had a right to "gamble[] on trial, risking more jail time for whatever small chance there might be of an acquittal" that would prevent him from having a criminal conviction and a punitive discharge. *Id.* at 1966.

### C. Need for an Evidentiary Hearing

This appeal is like many others that have concerned the issue of ineffective assistance of counsel. "We often receive claims that counsel have been ineffective, and they are extremely difficult to resolve on direct appeal" because the "[c]laims come to us . . . in the form of affidavits." *United States v. Polk*, 32 M.J. 150, 152 (C.M.A. 1991). As described above, Appellant has asserted in his affidavit (1) that his counsel gave him incorrect advice and (2) that he would not have pleaded guilty but for this advice, but the record contains no findings of facts on these points. Although the Government does not contest the first assertion in its brief, it strongly disputes the second. The Government directly asserts that "appellant failed to establish that he would not have pleaded guilty but for his counsel's erroneous advice." Unlike in *Lee*, where a United States magistrate judge held a hearing and made findings of facts, no military judge has heard evidence and made findings on the relevant issues in this case.

Whether an evidentiary hearing is necessary for resolving an ineffective assistance of counsel claim is a question of law. *See Hill*, 474 U.S. at 60 (deciding that no evidentiary hearing

---

answered he *would not have pleaded guilty*, we hold that he received ineffective assistance of counsel." (emphasis added)). In *Lee*, the petitioner successfully argued that "he can establish prejudice . . . because *he never would have accepted a guilty plea* had he [been given correct legal advice]." *Lee*, 137 S. Ct. at 1966 (emphasis added). Consequently, Appellant's allegation is a legally sufficient allegation that he was prejudiced.

was required when a defendant failed to allege the kind of prejudice necessary to satisfy second half of the *Strickland* test). In *Ginn*, 47 M.J. at 244, this Court held that "the same principles" as those applied in the federal courts "should be applied to determine whether a *DuBay* hearing is warranted in a guilty-plea case raising an ineffective-assistance-of-counsel claim." According to those principles:

> [t]he general rule for ordering an evidentiary hearing on a post-trial claim raised in federal civilian courts is that a hearing is unnecessary when the post-trial claim "(1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case," *i.e.*, "they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'"

*Id.* (quoting *United States v. McGill*, 11 F.3d 223, 226 (1st Cir. 1993)). As is relevant here, in applying the *Ginn* principles, a court must ask whether: "(1) the facts alleged would result in relief; (2) the alleged facts are conclusory or speculative; (3) the parties agree on the facts; [and] (4) the record 'compellingly demonstrate[s] the improbability of' the allegations." *United States v. Akbar*, 74 M.J. 364, 392 n.16 (C.A.A.F. 2015) (second alteration in original) (quoting *Ginn*, 47 M.J. at 248).

The first of the four *Ginn* factors favors an evidentiary hearing because Appellant's allegation of prejudice, if true, "would result in relief" for the reasons stated above. *Id.* The second factor favors an evidentiary hearing because Appellant's factual allegation is not wholly speculative: as explained more fully below, it is supported by his own sworn statement, his submission of the RFGOS, and the affidavits of his two defense counsel. And the third factor favors an evidentiary hearing because both Appellant and the Government disagree on the material factual question of how Appellant would have pleaded if he had been given correct legal advice.

Finally, the fourth factor also favors Appellant because the record does not "*compellingly demonstrate the improbability of*'" Appellant's factual allegations. *Id.* (emphasis added) (alteration in original removed) (citation omitted). On this point, the Court identifies five reasons for concluding that, despite what Appellant has asserted, and despite the

corroboration in trial defense counsels' accounts, there is no "reasonable probability" that Appellant would have rejected the plea offer from the Government even if trial defense counsel's performance had not been deficient. These reasons are: (1) the plea agreement had favorable terms; (2) the Government's case was strong; (3) there were no strong extenuating or mitigating circumstances that would lead to a reduced sentence; (4) Appellant was likely to lose the bargain if he did not accept it in a timely manner; and (5) Appellant's chain of command recommended disapproval of the RFGOS request. Furth, __ M.J. at __ (6–8).

These five observations are correct but they are insufficient to distinguish this case from the Supreme Court's decision in *Lee*. In *Lee*, as in this case, the petitioner's plea agreement had favorable terms that included "a lighter sentence than he would [receive] if convicted at trial." 137 S. Ct. at 1963. In addition, in *Lee,* as in this case*,* the Government's case was strong. The United States District Court found that "[i]n light of the overwhelming evidence of Lee's guilt," he "would have almost certainly" been found guilty and received "a significantly longer prison sentence, and subsequent deportation," had he gone to trial. *Id.* at 1964 (alteration in original) (citation omitted) (internal quotation marks omitted). The United States Court of Appeals asserted that Lee had "no *bona fide* defense, not even a weak one." *Id.* (citation omitted) (internal quotation marks omitted). Yet, despite all this, the Supreme Court held that Lee was prejudiced because there was *other* evidence that he would not have pleaded guilty.

In this case, there is also other evidence. Appellant's affidavit does not stand alone. The record contains evidence that Appellant submitted the RFGOS, which supports his assertion that he wanted to be administratively discharged. In addition, the record contains Captain Floyd's sworn affidavit, which confirms that Appellant received erroneous legal advice "[b]efore he decided to submit the RFGOS, . . . and again when deciding whether he would submit an OTP, or plead guilty at all." And according to Captain Floyd, the erroneous legal advice affected their decision-making because "one of the reasons that [Appellant and his counsel] decided the court-martial should not be delayed to await the RFGOS" was

that, in the trial defense counsel's erroneous view, "the results of the trial would not matter" and delay might then result in the loss of "the favorable terms of the OTP." Finally, and perhaps most importantly, Captain Floyd's sworn affidavit alleges that "it was only after the RFGOS was submitted, that [Appellant] finally decided against contesting the larceny charge at court-martial." Based on this additional, *independent* evidence concerning the Appellant's decision-making process, I cannot conclude, as the Court does, that the record "conclusively show[s]" that Appellant did not have the requisite mental state. __ M.J. at __ (8 n.10) (citation omitted) (internal quotation marks omitted). In my view, this evidence is more than sufficient to require an evidentiary hearing to test the truth of Appellant's statement instead of simply rejecting it as highly improbable.

Three final points require mention. First, I do not assert that Appellant's allegations are true. If the issue were tested at an evidentiary hearing, the Court's suspicion that Appellant is not telling the truth in his affidavit might prove to be correct. On the record currently before the Court, pleading guilty certainly sounds like it was the better choice for Appellant based on the information he had at the time. And the Government most likely would want to advance the Court's five points as arguments for disbelieving Appellant's assertions about how he would have pleaded. But these are matters for a *DuBay* military judge to consider in finding the facts.

Second, an evidentiary hearing in this case would not involve anything extraordinary. Although the *DuBay* military judge would have to determine Appellant's subjective state of mind, military judges routinely make such determinations. *See, e.g., United States v. Cravens*, 56 M.J. 370, 375 (C.A.A.F. 2002) ("[T]he question of [a person's] state of mind. . . . [is] a question of fact for the trial judge."). As at any evidentiary hearing, the military judge would hear testimony, both on direct examination and cross-examination. The military judge would assess the demeanor of the witnesses and make the kinds of credibility determinations to which this Court ordinarily defers on appeal. *See United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997) ("[W]e necessarily defer to the *DuBay* judge's determinations of credibility in this regard."). And considering the arguments of counsel on both sides, the

*DuBay* military judge would decide whether the Appellant was or was not telling the truth in his affidavit, just as military judges routinely assess the veracity of sworn statements. I therefore do not agree with the Court's assertion that a "*DuBay* military judge would [not] be in a better posture than this Court to resolve" the question of whether Appellant pled guilty because of erroneous legal advice. __ M.J. at __ (8 n.10).

Third, I do not mean to suggest that an appellant who raises a claim of ineffective assistance of counsel is always entitled to an evidentiary hearing. In some cases, for example, an appellant may not aver facts that, if true, would show both a deficient performance by counsel *and* prejudice. *See Hill*, 474 U.S. at 60. In other cases, an assertion by an appellant that is not backed up *by some other evidence of the kind present here* may be insufficient to warrant further inquiry. The Supreme Court cautioned in *Lee* that "[c]ourts should not upset a plea *solely* because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." 137 S. Ct. at 1967 (first emphasis added).

### III. Conclusion

For the reasons stated above, I would reverse the decision of the United States Army Court of Criminal Appeals and remand the case for a *DuBay* hearing in accordance with this opinion. Once the relevant facts are determined, that court would reconsider whether Appellant has established ineffective assistance of counsel in accordance with the Supreme Court's decisions in *Strickland* and *Lee*.